## KOEHLER *v.* SCHEIDER.

*(Common Pleas of New York City and County, General Term.  June 2, 1890.)*

**1. EVIDENCE—FORMER TRIAL—DECEASED WITNESS.**
    The words "former trial," as used in Code Civil Proc. N. Y. § 830, providing that, where a party has died since the trial of an action, decedent's testimony taken or read "at the former trial" may be given in evidence at a new trial, do not mean the last trial only, but take in any former trial where evidence was given by a party since deceased.

**2. LANDLORD AND TENANT—NOTICE TO QUIT—"ON OR BEFORE."**
    A notice by a landlord to his tenant to move "on or before" the date when the lease expires is not a continuing offer to accept a surrender of the existing lease whenever the tenant elects to make it, but simply means that the landlord will insist on his legal right to have the tenant move out before the last day of the term.

Appeal from city court, general term.

Action by Bertha Koehler, as executor of Hermann Koehler, against Joseph Scheider, to recover rent for the months of March and April, 1886, under a yearly letting from May 15, 1885. The defense was a general denial and a constructive eviction. There was a verdict for defendant. The judgment entered thereon was affirmed at general term of the city court, and plaintiff again appeals. For report of a former appeal, see 4 N. Y. Supp. 611. Code Civil Proc. N. Y. § 830, provides that "where a party has died since the trial of an action, or the hearing upon the merits of a special proceeding, the testimony of the decedent, or of any person who is rendered incompetent by the provision of the last section, taken or read in evidence at the former trial or hearing, may be given or read in evidence at a new trial or hearing by either party, subject to any other legal objection to the competency of the witness, or to any legal objection to his testimony, or any question put to him."

Argued before LARREMORE, C. J., and BOOKSTAVER, J.

*E. J. Myers,* (*C. P. Daly,* of counsel,) for appellant. *Maurice Rapp,* (*George H. Yeaman,* of counsel,) for respondent.

LARREMORE, C. J. There have already been so many trials of this case that it is to be regretted that the judgment must be again reversed. I think there was sufficient to go to the jury on the question of constructive eviction. I am also of opinion that it was not error to allow the testimony of plaintiff's testator, given on the first trial of this action, to be read in evidence on the present trial. The contention of appellant seems to be that section 830 of the Code would allow only such testimony as was taken upon the trial immediately preceding this one; but I think the language of the section sufficiently broad to take in any former trial where evidence was given by a party since deceased, which it is subsequently desired to use. There is nothing to show that such was not the intention of the legislature; and the opposite party always has the compensating privilege, granted by section 829, of being himself examined orally as to any matters referred to in the testimony so read.

But the trial judge fell into one very grave error in his charge. It appears that on or about the 1st day of February, 1888, the landlord, being plaintiff's said testator, sent the following note to defendant, dated that day:

"DEAR SIR: I hereby beg to inform you that I desire you to vacate the premises on First avenue which you now rent from me on or before April 30th, 1886."

The trial judge told the jury that they might read this letter in connection with the following one of March 1, 1886, from the defendant:

"*Mr. H. Koehler*—DEAR SIR: "We hereby surrender you the keys of prem-

ises occupied by us, and give you full possession. The premises being un-
tenantable is the cause of our removal."

The instruction to the jury was, in effect, that the aforesaid letter from the
landlord was a continuing offer from the time of its transmission to accept a
surrender of the existing lease whenever the defendant chose to make it; that
the letter from the defendant might be construed to operate as such surrender;
and that the lease, therefore, came to an end on March 1st. We think this
was a misconstruction of the landlord's words. Some such communication
from him was necessary at some time before the termination of the original
lease; because otherwise, said lease being a verbal one for one year, a new
demise for a second year would arise by operation of law, if defendant elected
to remain. In the exercise of common sense, as well as good legal judgment,
this is the only interpretation that could be put upon the landlord's letter.
Upon a former trial of this action one of the judges of the court below has
construed this letter as follows: "Where a landlord gives his tenant a notice
to move on or before April 30th, that means he is not to move after April
30th; that he is to move on the termination of the tenancy, the liberty to move
sooner being a liberty the tenant has. A landlord may give a tenant notice
to move on or before the 1st of May, his lease being up to the first of May;
but that does not mean that, if a tenant should move out the next day, he
should pay no rent. It means that the landlord will insist upon his legal right
to have him move out before the last day of the term. 'On or before' is com-
mon language of the law, meaning that, if you remain one day after, you re-
main at your peril; you are a trespasser,—a wrong-doer. A landlord can take
nothing away from a tenant's rights, and waives nothing by serving a notice
of that kind." This view is eminently sound, and it was grave error to sub-
mit any different one to the jury. They were allowed to find a verdict either
on the ground of eviction, or of alleged surrender of the lease brought about
by this correspondence. Of course, we cannot say upon which ground their
finding was based; and the judgment must be reversed, and a new trial or-
dered, with costs to abide the event.

BOOKSTAVER, J., (*concurring*.) As was said by us when this case was be-
fore us on a former appeal; (4 N. Y. Supp. 611,) "what would justify a ten-
ant in vacating the premises" hired by him for a constructive eviction "de-
pends so much on the terms of the lease," and various conditions in that opin-
ion set forth, that any discussion of it at that time would be premature. As
the testimony on the new trial may change the aspect of the case, I still deem
it premature to discuss that question at this time, or to express any opinion
on that evidence presented to us now. The question is a very close one, and
can be satisfactorily decided when all the facts are before the court, to be de-
termined after a trial free from error in other respects.

The plaintiff having died before the last trial of this action, and the defend-
ant having become incompetent, under section 829 of the Code, to testify to
any personal transaction between himself and the deceased, he availed him-
self of the right given by section 830 of the Code to read his evidence given
on both of the former trials of this action, subject to legal objection, etc., as
provided in section 830. The plaintiff objected to the reading of the testi-
mony given on the first trial, contending that the section confined the defend-
ant to reading the evidence given by him on the last preceding trial, and did
not permit the reading of that given on the first trial. I agree with the learned
chief judge that no error was committed in allowing both to be read. The ap-
pellant's contention is based upon the language used in the section which per-
mits the party rendered incompetent to read his evidence "taken or read at
the former trial;" insisting that it means the last trial only, if there be more
than one. This construction, if correct, would confine the reading of such
testimony to the first trial only, following the death of the other party; for

the language permitting such reading is, "at a new trial or hearing," and not any new trial, if more than one should be required, which would defeat the object of the section in case there were two trials following the death of a party. I think the intention of the section was to give competency to any testimony of the witness given in the case between the same parties before the incompetency attached to him. The then plaintiff, against whose executrix it is now offered, had the same opportunity, and certainly as great an interest, as his executrix can have to resort to every test to probe the witness and his evidence. The same reasons which render it proper to allow the testimony given on the last trial preceding the plaintiff's death operate to allow the reading of the testimony given on the first trial, as far as the same is pertinent to the contest. I therefore think the section was intended to permit the reading of any testimony given under such circumstances, whether on the last or any preceding trial of the action.

The question read from the former examination of the witness, in which he was asked to state what the deceased had agreed to furnish, and what he had agreed to do, is, I think, fatal. It clearly called for the conclusion of the witness merely, and not for what took place or was said between the parties. The learned judge who presided at that trial first excluded the question on plaintiff's objection that it merely called for a conclusion, and when, shortly afterwards, it was repeated, allowed it; and the answer shows that he gave his conclusions only, and not what was said or done. It was sufficient for the plaintiff to object, as he did, on the grounds before stated by him, and it was not necessary to repeat those grounds. The court's attention had been specifically called to them. *Dilleber* v. *Insurance Co.*, 69 N. Y. 256, 260. The testimony given at the former trial is allowed to be read, subject to any legal objection to the testimony, or to any question put to the witness.

I agree with the learned chief judge, for the reasons assigned by him, that it was error to charge as was done in regard to the letters of February 1, 1886, and March 1, 1886. For these reasons the judgment must be reversed, and a new trial ordered, with costs to abide the event.